UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RICKIE D. WINSTEAD,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:06-cv-590

Barrett, J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g).  At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to disability insurance benefits ("DIB").  (*See* Administrative Transcript ("Tr.") 15-26) (ALJ's decision)).

**I.**

On June 30, 2003, plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income.  In both applications, plaintiff alleged an onset date of December 31, 1997 due to hepatitis B or C and a reading disorder.  His applications were denied initially and on reconsideration.

Plaintiff then requested a hearing *de novo* before an ALJ.  An evidentiary hearing,

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

at which plaintiff was represented by counsel, was held on August 17, 2005 and

September 9, 2005.  (Tr. 320-40, 341-60.)  Also present was vocational expert, William

Cody.

At the August 2005 hearing, plaintiff withdrew his claim for DIB; and proceeded

to pursue only his claim for SSI, with an amended onset date of June 30, 2003, the date he

filed his SSI application.

On December 16, 2005, the ALJ entered his decision denying plaintiff's claim.

That decision stands as defendant's final determination consequent to denial of review by

the Appeals Council on July 18, 2006.  (Tr. 6-8.)

The ALJ's "Findings," which represent the rationale of the decision, were as

follows:

1.     The claimant's insured status for the purpose of entitlement to Title
   II disability insurance benefits expired on December 31, 1997.
   Pursuant to the claimant's request, the Title II portion of his claim is
   dismissed.  (20 CFR § 404.957(a)).

2.     The claimant has not engaged in substantial gainful activity since June 30,
   2003, his amended alleged onset date of disability (20 CFR § 416.920 (b)).

3.     The claimant has the following combination of severe impairments:
   Hepatitis C, arthralgias, anxiety and depression, and history of
   alcohol use (20 CFR § 416.920 (c)).

4.     The claimant does not have an impairment or combination of impairments
   that meets or medically equals on of the listed impairments in Appendix 1,
   Subpart P, Regulation No. 4.

5.     Upon careful consideration of the entire record, the undersigned
   finds the claimant has the residual functional capacity to sit 6 hours
   in an 8-hour workday, stand and/o walk 6 hours in an 8-hour

workday, lift 10 pounds frequently and 20 pounds occasionally.  He can climb stairs occasionally, but not ladders.  He is able to kneel, crouch, crawl, stoop and balance occasionally.  With regard to his mental capacity, he can perform simple routine directions, but does have difficulty reading and following written directions.  His ability to withstand day-to-day work stress is moderately limited, but not precluded.

6.  The claimant is unable to perform any past relevant work (20 CFR § 416.956.)

7.  The claimant was born on June 1, 1955 and was 48 years old on the amended alleged disability onset date, which is defined as a younger individual age 45-59 (20 CFR § 416.936.)

8.  The claimant has a least a high school education and is able to communicate in English (20 CFR § 404.1564 and 416.964.)

9.  The claimant has no transferrable job skills (20 CFR § 416.968.)

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR § 416.960 (c) and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from June 30, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920 (g)).

(Tr. 17-26.)

In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI.

On appeal, plaintiff maintains that: (1) the ALJ erred in evaluating plaintiff's illiteracy; (2) the ALJ erred in weighing the opinion of plaintiff's treating physician; (3) the ALJ erred in evaluating plaintiff pain, credibility, and subjective complaints; and (4) the ALJ committed various vocational errors.  Each argument will be addressed in

turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can

still perform his past relevant work; and, finally, at Step 5 – the step at which the burden

of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant

can no longer perform his past relevant work, whether significant numbers of other jobs

exist in the national economy which the claimant can perform. *See Gwizdala v.*

*Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16,

1999) (per curiam). If the ALJ determines at Step 4 that the claimant can perform his past

relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R.

§ 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past

relevant work, the matter should be remanded for further consideration under Step 5. *See*

*Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present

sufficient evidence to show that, during the relevant time period, he suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For his first assignment of error, plaintiff maintains that the ALJ erred by failing to

find plaintiff illiterate. Plaintiff further asserts that had the ALJ found plaintiff illiterate,

the Grids would have directed the ALJ to award plaintiff benefits. 20 C.F.R. Part 404,

Subpart P, App. 2, Table 2, Rule 202.09. Plaintiff's assertion lacks merit.

The Social Security Regulations explain that:

5

> Illiteracy means the inability to read or write.  We consider someone
> illiterate if the person cannot read or write a simple message such as
> instructions or inventory lists even though that person can sign his or her
> name. Generally, an illiterate person has had little or no formal schooling.

20 C.F.R. § 404.1564(b)(1).

In support of his claim of illiteracy, plaintiff refers to testing done in August 2003, revealing a reading comprehension grade equivalent of 3.4 (third grade, fourth month) (Tr. 199).  Based on that reading score, plaintiff claims that he is illiterate.

However, no physician or medical expert of record opined that the plaintiff was actually or functionally illiterate.  *See West v. Barnhart,*  2002 WL 31159305, *4 (S.D. Ohio 2002).  Moreover, as noted above, the regulations provide that generally an illiterate person has had little or no formal schooling.  In this case, plaintiff has had twelve years of formal schooling and previously performed two skilled jobs (machine operator and apartment maintenance) according to the vocational expert, Mr. Cody (Tr. 147, 355).

Plaintiff further argues that the ALJ should have found him illiterate because his educational characteristics and his reading test scores closely mirror those of the plaintiff in *Skinner v. Sec'y of Health and Human Servs*., 902 F.2d 447 (6th Cir. 1990). *See Skinner,* 902 F.2d at 450-51 (concluding that a claimant who reads below the third-grade level and whose math computational skills place him in the first percentile of his age population is illiterate).

The present case is factually distinguishable from *Skinner*, however.  In *Skinner*, the plaintiff only attended school on a full-time basis through age twelve, and the Court emphasized that, in addition to poor reading and writing skills, the plaintiff had limited

mathematics skills.  *Id.*  In contrast, plaintiff testified that he was good at math.  (Tr. 327).

Thus, plaintiff's formal schooling, his ability to perform two skilled jobs, and his good

mathematical abilities contradict his claim of illiteracy.

Additionally, even if found to be illiterate, plaintiff is not disabled under the Grid

because his previous work experience included skilled and/or semi-skilled work.  *See* 20

C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09.

In sum, the ALJ noted plaintiff's borderline intellectual functioning and reading

comprehension at the third grade level, but found that this would not preclude him from

performing unskilled work.  This finding is supported by substantial evidence and should

not be disturbed.

## B.

For his second assignment of error, plaintiff maintains that the ALJ erred in failing

to give controlling weight to the opinion of Dr. Koles, plaintiff's treating physician.

Specifically, plaintiff asserts that Dr. Koles' findings are consistent with the evidence of

record, and, therefore, should have been afforded controlling weight.

An ALJ must give the opinion of a treating source controlling weight if she finds

that the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004)

(quoting 20 C.F.R. § 404.1527(d)(2)).  Deference is due, however, only when the

physician supplies sufficient medical data to substantiate his diagnosis and opinion.

*Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976).  Mere diagnosis of a

condition is not indicative of a disabling functional debilitation.  *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p).  Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

Here, as noted by the ALJ, Dr. Koles has been plaintiff's primary treating source since November 2001.  In September 2003, Dr. Koles opined that plaintiff was unemployable, yet she also found that plaintiff has the ability to stand/walk two hours in an eight-hour workday, sit four hours in an eight-hour workday, and lift up to five pounds occasionally and six to ten pounds frequently.  (Tr. 179.)  In June 2005, Dr. Koles completed a Hepatitis C Residual Functional Capacity Questionnaire wherein she concluded that plaintiff is not capable of working an eight-hour working day, 40 hours per week, but is limited to working between 10 to 15 hours per week, as he is expected to be absent from work more than four times per week.  Nonetheless, Dr. Koles opined that plaintiff is able to sit about four to five hours, as well as stand/walk four to five hours in an eight hour workday.  (Tr. 266.)

In her decision, the ALJ acknowledged Dr. Koles as a treating physician, yet

8

assigned her opinions little weight.  (Tr. 23).  The ALJ based her finding on the inconsistencies between Dr. Koles' conclusions and her clinical and laboratory findings. The ALJ also explained that Dr. Koles' conclusions were inconsistent with plaintiff's own descriptions of his physical abilities.  (*Id*.).  The undersigned finds that the ALJ properly weighed the medical evidence of record.

As the record reflects:

In September 2002, Dr. Koles reported that plaintiff was alert and in no acute distress.  (Tr. 186).  His lungs were clear, and his heart had a regular rate and rhythm.  On examination, plaintiff's cervical spine revealed a good range of motion.  Dr. Koles' most significant finding was "a little bit of warmth in the right knee."  (*Id.*).  On the same date, September 13, 2002, Michael W. Stevens took x-rays of plaintiff's hands and knees.  (Tr. 188).  X-rays of plaintiff's hand produced completely normal results.  While the x-rays of plaintiff's knee showed mild medial joint space narrowing, they were otherwise unremarkable.  (*Id*.).

Moreover, plaintiff's own testimony and statements contradict Dr. Koles' restrictive findings.  Plaintiff stated that he does light yard work, cooks for his mother, and takes out the trash (Tr. 198).  At his initial hearing, held on August 17, 2005, plaintiff testified about taking care of his father who had Alzheimer's disease.  (Tr. 326).  He noted that his father had passed away the year prior to the hearing, so that presently he took care of his mother.  (*Id*.).  He also testified that he took care of the four acres of land that he and his mother owned.  (Tr. 329.)  This involved mowing the grass and doing the

9

"trimming and everything."  (Tr. 334)

Accordingly, Dr. Koles' assessments are not supported by the clinical or laboratory findings, and they are inconsistent with her own treatment notes.  The ALJ clearly articulated her reasoning for the weight assigned to the opinion of Dr. Koles, and the undersigned finds that her decision to given little weight to Dr. Koles' disability finding is supported by substantial evidence

## C.

For his third assignment of error, plaintiff maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints.  Plaintiff specifically asserts that his complaints of disabling pain are supported by objective medical evidence, and that the ALJ improperly relied on his daily activities, and that she failed to consider the effect of plaintiff's medical treatment and prescribed medications in her credibility analysis.  Plaintiff's assertions are unavailing.

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition.  *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain.  *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

Social Security Ruling 96-7p emphasizes:

> No symptom or combination of symptoms may be the basis
> for a finding of disability, *no matter how genuine* the
> individual's complaints may appear to be, unless there are
> medical signs and laboratory findings demonstrating the
> existence of a medically determinable physical or mental
> impairment(s) that could reasonably be expected to produce
> the symptoms.

Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483, 34487 (1996) (emphasis

added); *see also* 20 C.F.R. §§404.1529(b).

SSR 96-7p establishes a two step process for evaluating the claimant's testimony

and statements about symptoms such as pain, fatigue or weakness.

First, the ALJ must consider whether there is an underlying medically

determinable physical or mental impairment that could reasonably be expected to produce

the claimant's pain or other symptoms.  If not, the symptoms cannot be found to affect the

claimant's ability to do basic work activities.  SSR 96-7p.

At step two , the ALJ must evaluate the intensity, persistence and limiting effects

of the claimant's symptoms to determine the extent to which the symptoms limit his

ability to work.  If the claimant's statements about the intensity, persistence, or

functionally limiting effects of pain or other symptoms are not substantiated by objective

medical evidence, the ALJ must make a finding on the credibility of the claimant's

statements based on a consideration of the entire case record.  SSR 96-7p.  Moreover, 20

C.F.R. §§ 404.1529(c) and 416.929 (c) indicate other relevant factors to consider in

assessing credibility including: the claimant's daily activities; the location, duration,

11

frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the claimant has used to relieve the pain or other symptoms; and functional limitations and restrictions.

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff - to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (per curiam) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

Here, plaintiff simply asserts that Dr. Koles' findings and the fatigue expected from hepatitis support his claim of disabling pain. Plaintiff, however, does not cite to any objective medical evidence, clinical findings and/or treatment notes in support of his claim. As noted above, objective clinical findings fail to support Dr. Koles' limitations. (*See* Tr. 186-188, 193.)

Plaintiff also argues that the ALJ improperly evaluated his daily activities and isolated parts of the record in order to support her decision. However, it is proper for an ALJ to consider plaintiff's daily activities in her credibility analysis. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 532 (6th Cir. 1997). As noted by the

12

Commissioner, plaintiff's own testimony was inconsistent with his daily activities.

For example, plaintiff testified that his mother did most of the housework.  Yet, he also testified that his mother is in poor health and that "I have to do everything for her." (Tr. 233.)  Plaintiff also testified that he did most of the cooking, did the dishes ,and did the grocery shopping.  Moreover, there is no evidence that the ALJ improperly isolated parts of the record in support of her decision; to the contrary, the ALJ not only considered plaintiff's daily activities, but also relied on the medical evidence of record and plaintiff's testimony in his analysis.

Plaintiff's assertion the ALJ's credibility evaluation is flawed because the ALJ failed to evaluate his medical treatment and his need for strong pain medication also lacks merit.  The ALJ discussed plaintiff's medical treatment for his liver, as well as plaintiff's refusal to adhere to the treatment recommendations.  (Tr. 24.)  Additionally, although the plaintiff asserts that ALJ failed to note his strong medication, specifically his use of Voltaren, a review of the record reveals that plaintiff stopped taking Voltaren due to stomach irritation.  (Tr. 194.)

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs*., 987 F.2d 1230, 1233 (6th Cir. 1993). Here, the medical evidence of record and plaintiff's own testimony and daily activities fail to corroborate his allegations of total disability, and, therefore, the ALJ's credibility finding is supported by substantial evidence.

### D.

For his last assignment of error, plaintiff maintains that the ALJ's determination at step-five in the sequential evaluation of disability is not supported by substantial evidence because the vocational expert erred in asserting that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").

Here, the ALJ's hypothetical questions to the VE, noted, *inter alia*, that Dr. Bonds had diagnosed borderline intellectual functioning and had observed that although plaintiff had been able to follow directions during a test, he would have difficulty reading and following written directions.  (Tr.  357).  In response, the VE identified unskilled jobs as a light level assembler, packer, or cleaner.  (Tr. 356).  The VE further stated that his testimony was consistent with the DOT.

Plaintiff, however, asserts that he cannot perform two of these jobs because, according to the descriptions in the DOT, they require reasoning abilities that would require an ability to perform detailed work and, thus, do not constitute unskilled work. Plaintiff also argues that all three of these jobs would require reading abilities beyond his capabilities.  Plaintiff's arguments are not well-taken.

Although SSR 00-4p requires an ALJ to affirmatively inquire about "any possible conflict" between the evidence offered by a VE and information provided in the Dictionary of Occupational Titles (DOT), the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations.  *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir.1995).

14

Furthermore, "[a]n ALJ may rely on vocational expert testimony notwithstanding contrary conclusions in the DOT if the expert is found to be credible, *Barker,* 40 F.3d at 795, and if the question posed to the expert "accurately reflects the claimant's physical and mental limitations."  *Strong v. Social Sec. Admin*., 88 Fed.Appx. 841, 846-847, 2004 WL 232242,**5 (6th Cir. Feb. 3, 2004) (citing *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987).  Here, the questions posed to the VE accurately reflected plaintiff's limitations, and the ALJ found the VE to be credible.

Furthermore, plaintiff's argument is strongly undermined by his past ability to perform skilled work despite his poor reading abilities.  Accordingly, the ALJ properly relied on the testimony of the VE.

For the foregoing reasons, plaintiff's assignments of error are without merit.  The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**


Date: February 28, 2008                                     s/Timothy S. Black
                                                            Timothy S. Black
                                                            United States Magistrate Judge

UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

RICKIE D. WINSTEAD,                              Case No. 1:06-cv-590

     Plaintiff,                                  Barrett, J.
                                                 Black, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**NOTICE**

Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).