**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

RICKIE D. WINSTEAD,

    Plaintiff

  v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No.: 1:06cv590

Judge Michael R. Barrett

**<u>ORDER</u>**

Before the Court is Magistrate Judge Black's February 28, 2008 Report and Recommendation (hereinafter "Report") (Doc. 8). In the Report, Magistrate Judge Black recommends that the decision of the Commissioner be found to be supported by substantial evidence and should be affirmed. Plaintiff filed Objections to the Magistrate's Report (Doc. 9).

This is a Social Security appeal brought pursuant to 42 U.S.C. §405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff was not entitled to Supplemental Security Income benefits. (See Administrative Transcript ("Tr.") 15-26 (ALJ's decision)).

    I.    <u>Objections</u>

When objections are received to a magistrate judge's Report and Recommendation on a dispositive matter, the assigned district judge "shall make a de novo determination...of any portion of the magistrate judge's disposition to which specific written objection has been made...." Fed. R. Civ. P. 72(b). After review, the district judge "may accept, reject or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge

with instructions." *Id; see also* 28 U.S.C. 636(b)(1)(B). General objections are insufficient to preserve any issues for review; "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. In the instant matter, Plaintiff objected to issues concerning his illiteracy, the weight given to Dr. Koles findings, the credibility of the Plaintiff regarding his complaints of pain, and vocational errors. Plaintiff did not object to the standard of review and applicable law as set forth by Magistrate Judge Black.

II. <u>Background Facts and Procedural History</u>

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits in June, 2003, alleging a disability onset date of December 31, 1997 (Tr. 303)[1]. This application was based upon Plaintiff's contraction of hepatitis B or C and a reading disorder. Plaintiff's application was denied initially and upon reconsideration. Upon denial of his claims on the state agency level, he requested a hearing *de novo* before an Administrative Law Judge. A hearing was held on August 17, 2005 as well as on September 9, 2005 at which time Plaintiff appeared with counsel and testified. (See Tr. 320-340, 341-360). A vocational expert, Mr. William T. Cody, was also present and testified at the September 9, 2005 hearing (Tr. 343).

At the hearing, Plaintiff changed the onset date of his disability to the date of the application (Tr. 323). Plaintiff's application for SSI was denied on December 16, 2005 (Tr. 12-26) and on July 18, 2006 by the Appeals Council (Tr. 6-8).

---

[1]Plaintiff originally filed a claim for disability benefits as well, however, this claim was withdrawn at the hearing (Tr. 323).

2

At the time of the hearing Plaintiff was a fifty year old male with a 12th grade education (Tr. 95, 326-327), however, he has a reading comprehension at the 3.4 grade equivalent (third grade, four months) (Tr. 199). Despite any reading difficulties Plaintiff may have, he is good at math (Tr. 327). He had past relevant work experience as an apartment maintenance worker and a machine operator (Tr. 90). Plaintiff has had hepatitis since at least 2002 (Tr. 171). Since 2001, he has been treated by Dr. Koles (Tr. 264). It is noted in the record that his joint pain is caused by a mildly elevated rheumatold factor due to the hepatitis (Tr. 193). In September, 2004 a liver biopsy confirmed the hepatitis C (Tr. 243). A 48 week program of Interferon and Ribavarion therapy was recommended (Tr. 259). However, there is no evidence in the record that demonstrates that this program was completed by Plaintiff.

The ALJ found that Plaintiff could sit six hours in an eight hour work day, stand and/or walk six hours in an eight hour work day, lift 10 pounds frequently and 20 pounds occasionally. The ALJ found that Plaintiff can climb stairs occasionally, but not ladders, and that he is able to kneel, crouch, crawl, stoop and balance occasionally. The ALJ also determined that Plaintiff can perform simple routine directions, but does have difficulty reading and following written directions. His ability to withstand day-to-day work stress is moderately limited, but not precluded (Tr. 20). The ALJ's "Findings," which represent the rationale of her decision were as follows:

> 1. The claimant's insured status for the purpose of entitlement to Title II disability insurance benefits expired on December 31, 1997. Pursuant to the claimant's request, the Title II portion of his claim is dismissed. (20 CFR § 404.957(a)).

2. The claimant has not engaged in substantial gainful activity since June 30, 2003, his amended alleged onset date of disability (20 CFR § 416.920 (b)).

3. The claimant has the following combination of severe impairments: Hepatitis C, arthralgias, anxiety and depression, and history of alcohol use (20 CFR § 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals on of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. Upon careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to sit 6 hours in an 8-hour workday, stand and/o walk 6 hours in an 8-hour workday, lift 10 pounds frequently and 20 pounds occasionally. He can climb stairs occasionally, but not ladders. He is able to kneel, crouch, crawl, stoop and balance occasionally. With regard to his mental capacity, he can perform simple routine directions, but does have difficulty reading and following written directions. His ability to withstand day-to-day work stress is moderately limited, but not precluded.

6. The claimant is unable to perform any past relevant work (20 CFR § 416.956.)

7. The claimant was born on June 1, 1955 and was 48 years old on the amended alleged disability onset date, which is defined as a younger individual age 45-59 (20 CFR § 416.936.)

8. The claimant has a least a high school education and is able to communicate in English (20 CFR § 404.1564 and 416.964.)

9. The claimant has no transferrable job skills (20 CFR § 416.968.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR § 416.960 (c) and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from June 30, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920 (g)).

4

(Tr. 17-26).  In summary, based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform unskilled light occupations (Tr. 25), and found that Plaintiff was not disabled (Tr. 26).

### III. Analysis

#### A. Standard of Review

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 USC § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In performing this review, the Court must consider the administrative record as a whole, *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 536 (6th Cir. 1981), but may consider only the evidence submitted to the final decision-maker, here the ALJ. *See Foster v. Halter,* 279 F.2d 348, 357 (6th Cir. 2001). The substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the court." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). This zone of choice includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Consequently, this Court should defer heavily to such findings by the ALJ. See *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky*, 35 F.3d at 1035 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)).

      B.      <u>Determination of Disability</u>

The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 CFR § 404.1505(a). The issue of disability is determined through a five-step sequential process set forth at 20 CFR § 404.1520. Step one requires determining whether the claimant is engaging in substantial gainful activity. If not, the inquiry moves to step two, which determines whether the claimant's impairments, individually or in combination are "severe." If a severe impairment is found, step three inquires as to whether the claimant's impairment meets or medically equals the requirements of any impairment in the Listing of Impairments at Appendix 1, Subpart P, Regulations No. 4, 20 CFR Part 404. If the claimant's impairment is not of listing-level severity, then step four requires inquiry into whether the claimant has the residual functional capacity (RFC) to perform past relevant work. *Id.* If the claimant shows that he cannot perform past relevant work because of impairments, the burden of proof shifts to the Social Security Administration in step five. The Administration must then identify other jobs existing in significant numbers in the national economy that the claimant can perform. If at any point it is determined that the claimant is or is not disabled, the inquiry stops. *Id.* For example, if the ALJ determines at step four that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 CFR § 404.1520(a). However, if the ALJ errs in

6

finding that the claimant can perform his past relevant work; the matter should be remanded for further consideration under step five. *See Wyatt v. Secretary of Health & Human Servs.*, 974 F.2d 680, 684 (6th Cir. 1992); *Lauer v. Bowen,* 818 F.2d 636, 641 (7th Cir. 1987). The claimant bears the ultimate burden of proof by sufficient evidence that he is entitled to disability benefits, 20 CFR § 404.1512(a), meaning, that he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. See 42 U.S.C. §423(d)(1)(A).

      C.     <u>Illiteracy</u>

Plaintiff argues that the ALJ and the Magistrate Judge erred by not finding Plaintiff to be illiterate. Plaintiff graduated from high school but reads at only a third grade level. Plaintiff asserts that based upon his illiteracy that he is disabled under the Grids citing 20 C.F.R. Part 404, Subpart P, App.2, Table 2, Rule 202.09. (Doc. 8, p5). The ALJ found that the Plaintiff "functions in the borderline to low average range of intellectual functioning based on his scores obtained on Wechsler Adult Intelligence Scale-III, with no significant difference between his Verbal and Performance IQ scores" (Tr. 23). She went on to find that "[h]e scored in the borderline range for immediate and working memory and low average range for generally delayed memory on the memory test. His reading comprehension score was at the third grade equivalent" (Id.). Dr. Goldsmith, the reviewing psychologist, noted that Plaintiff suffered from "borderline intellectual functioning reading D/O" (Tr. 216)(See also Tr. 18). However, Dr. Goldsmith did not list the pertinent symptoms, signs and laboratory findings that substantiate

7

the presence of this impairment (Id.).  Additionally, the ALJ specifically stated that the "determination of the State agency psychologist [Dr. Goldsmith] is given less weight in this decision because it was based primarily on the claimant's functioning when under the influence of substances and they failed to provide limitations, if any, based solely on the combined effect of the claimant's mental impairments" (Tr. 19).  The ALJ then found that the "claimant tested to have borderline intellectual functioning and reading comprehension at the third grade level (Exhibit 5F [Tr. 195]), but this would not preclude him from performing unskilled work" (Tr. 25).

> The Social Security Regulations explain that:
>
> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though that person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> 20 C.F.R. § 404.1564(b)(1).
>
> In contrast, "marginal education" is distinguished from "illiteracy" in the Social Security Regulations:
>
> Marginal education means ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a sixth grade level or less is a marginal education.
>
> 20 C.F.R. § 404.1564(b)(2).

*Skinner v. Secretary of Health & Human Services,* 902 F.2d 447, 450 (6th Cir. 1990).  As previously stated, Plaintiff graduated from high school, is good at math and has held skilled jobs.  Thus, there was substantial evidence for the ALJ to find that Plaintiff was not illiterate.

8

Another argument of Plaintiff is that the ALJ should have found him illiterate based upon the Sixth Circuit's comparable finding in *Skinner v. Secretary of Health and Human Services*, 902 F.2d 447 (6th Cir. 1990). In *Skinner,* the plaintiff only attended school on a full-time basis through age twelve, and the Court emphasized that, in addition to poor reading and writing skills, the plaintiff had limited mathematics skills. The Magistrate Judge found *Skinner* to be distinguishable as Plaintiff testified that he was good at math, that he graduated from high school and that he had the ability to perform two skilled jobs. Plaintiff argues that by definition math skills have nothing to do with literacy and that under the Grids Plaintiff is disabled (Doc. 9, p3). Although math skills are not a test of literacy, for the reasons set forth above, there was substantial evidence in the record for the ALJ to find Plaintiff not to be illiterate.

Plaintiff also argues that since he was mostly self-employed that he was able to hide his reading problems at work and that this fact should have been addressed by the ALJ (Doc. 9, p3). The Court does not find this argument has merit. An ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered. *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467 (6th Cir. 2004), quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Furthermore, based upon the past work experience of the Plaintiff and his daily activities, as set forth above, there was substantial evidence in the record to support the decision of the ALJ.

If Plaintiff is illiterate, Plaintiff argues that 20 C.F.R. Part 404, Subpart P, App. 2, Table 2, Rule 202.09 directs a finding of disability at step five of the sequential evaluation for an illiterate person who is closely approaching advanced age and who is unable to return to his past employment of unskilled labor. *See also Skinner v. Secretary of Health & Human Services*, 902 F.2d 447, 450 (6th Cir. 1990).  The Magistrate Judge found Rule 202.09 inapplicable to Plaintiff because his past employment was that of skilled labor, not unskilled. Plaintiff argues that this is inaccurate since the vocational expert found that he has no transferrable skills and thus, 20 C.F.R. 416.965(a) treats this past employment as the same as unskilled work.

20 CFR 416.965(a) specifically states: "If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled."  Additionally, Social Security Ruling 82-41 also states the Commissioner's intent to treat an unskilled work history and a skilled or semi-skilled work history with no transferable skills as equivalent:

> [A] person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs. *The table rules in Appendix 2 are consistent with the provisions regarding skills because the same conclusion is directed for individuals with an unskilled work background and for those with a skilled or semiskilled work background whose skills are not transferable*.  Soc. Sec. Rul. 82-41 at Par. 2(a) (emphasis added).

*Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000).  *See also Barillaro v. Comm'r of Soc. Sec.*, 216 F. Supp. 2d 121, 131 (E.D.N.Y. 2002).  The Court

10

agrees with Plaintiff that if he was illiterate, then Rule 202.09 would be applicable. However, as noted above, Plaintiff is not illiterate.

### D. Treatment of Treating Physicians' Medical Opinions

The ALJ is not bound by a treating physician's conclusory statement that the claimant is "disabled." *See Miller v. Secretary of Health & Human Services*., 843 F.2d 221, 224 (6th Cir. 1988). However, the ALJ must give the opinion of a treating source controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 544 (6th Cir. 2004)(quoting 20 CFR § 404.1527(d)(2)). On a claim for social security disability benefits, "substantial deference and, if the opinion is uncontradicted, complete deference must be given to medical opinions and diagnoses of treating physicians." *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). If the ALJ decides to discount the treating physician's medical opinion, the ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Commissioner Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(citing Soc. Sec. Rul. 96-2p). Here the ALJ properly set forth the weight given to Dr. Koles and the reasons, stating, "the assessments of Dr. Koles are given less weight in this decision. Although she is the claimant's primary care physician, her assessments are inconsistent with her

own clinical and laboratory findings, and the claimant's description of his physical abilities" (Tr. 23).  The ALJ's decision also set forth several of the inconsistencies referred to above (See Tr. 22).  This Court specifically notes the inconsistencies in Dr. Koles assertion that Plaintiff is not capable of working but also concluded that Plaintiff was able to sit for about four to five hours and stand/walk four to five hours in an eight hour workday (Tr. 266).

Plaintiff argues that the Magistrate Judge and the ALJ erred by not giving Dr. Koles the "most weight" in the record.  Arguing that the treatment relationship, length of treatment, supportability and consistency all support an entitlement to the most weight.  Plaintiff argues that Ruling96-2p (1996) notes that even if a treating doctor is not given controlling weight, that treating doctor is often entitled to the most weight in the record citing *Roush v. Commissioner*, 326 F. Supp.2d 858, 867-868 (S.D. Ohio 2004)(Doc. 9, 4-5).

Traditionally, it has been held that more weight is to be given to a supported report and conclusion from a treating doctor versus a paper review of the file.  *Shelman v. Secretary*, 821 F.2d 316, 312 (6th Cir. 1987).  However, as set forth above, the ALJ have a zone of choice which includes resolving conflicts in the evidence and deciding questions of credibility.  *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  Consequently, this Court should defer heavily to the findings of the ALJ.  See *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994).  If substantial evidence supports the ALJ's finding of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support

12

a finding of disability. *Felisky*, 35 F.3d at 1035 (citing *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)).

The ALJ clearly set forth who she was giving the most weight to and why, stating: "the undersigned gives greater weight to the opinion of Dr. Bonds with regard to the claimants's mental capacity (Exhibit 5F [Tr. 195]), and to the determination of the State agency [Dr. Morton] in finding the claimant retains the physical capacity to do light work activity, with an additional limitation to never climb ladders, ropes, or scaffolds (Exhibit 8F [Tr. 228]). The opinions are well supported by the record as a whole, they are not inconsistent with the overall record, and they are indicative of the claimant's physical functioning ability" (Tr. 23).

Plaintiff takes exception with the fact that the reviewing doctor (presumably Dr. Morton) did not review the entire file, including the liver biopsy in 2004 confirming the hepatitis, the later exams showing a larger liver, and the detailed form submitted by Dr. Koles in 2005 (Id. at 5). However, there is substantial evidence in the record for the ALJ to conclude that there were no significant changes in Plaintiff's condition between when Dr. Morton reviewed the file in 2003 and her decision in 2005. Although the hepatitis was confirmed in 2004, Plaintiff's condition was not in question prior to that date.

Additionally, Plaintiff argues that he is being penalized "for caring for his bedridden father and doing activities necessary for his care and for trying to maintain a semblance of lifestyle" and that the Magistrate Judge erred by considering these activities (Doc. 9, p5-6). Although sitting next to his bedridden

13

father does not demonstrate an ability to do light work, the fact that Plaintiff testified that he cares for four acres of land (Tr. 334), cooks, does laundry, and shops for his own groceries (Tr. 198) is substantial evidence of his ability to do light work.

### E. Subjective Complaints of Pain

The Plaintiff argues that the Magistrate Judge and the ALJ failed to consider plaintiff's subjective complaints of pain. "Subjective testimony of pain cannot be dismissed out of hand and must be considered along with such other "criteria" as "objective medical facts, diagnoses, and expert medical opinions." *Townsend v. Secretary of Health & Human Servs.*, 762 F.2d 40, (6th Cir. 1985). "Pain alone, if the result of medical impairment, may be severe enough to constitute disability for social security purposes," *King*, 742 F.2d at 973. Although there must be some objective medical evidence relevant to the subjective claim of disabling pain. *Noe v. Heckler*, 512 F.2d 588, 595-596 (6th Cir. 1975).

In the present case, Plaintiff alleges to suffer from fatigue and arthritis as a result of his hepatitis. However, the ALJ concluded that "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not supported by the record and are not entirely credible" (Tr. 23). Additionally, the ALJ found that "[h]is testimony at the September 2005 hearing that he has problems using his hands is not supported by the record and is contradictory to his testimony at the previous hearing held less than one month earlier when he testified he could use both hands. He testified he spends 75% of

14

the day in a recliner with his head and feet elevated, but this disagrees with his own description of his activities of daily living. Moreover, there is no evidence in the record to support such a need" (Tr. 24). Based upon the reasons set forth herein and more fully in the ALJ's decision, there is substantial evidence to support her conclusions.

### F. Residual Functional Capacity/Vocational Errors

Residual Functional Capacity (RFC) is an assessment of an individual's maximum ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling 96-8p (1996). A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Id.* The RFC assessment considers only medically determinable impairments and the corresponding functional limitation and restrictions. *Id.* Light work "involves lifting up to 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). Social Security regulations provide that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* Sedentary work, on the other hand, involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 CFR § 404.1567(a). "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.* In the present case, the ALJ determined that the plaintiff has the residual functional capacity to sit 6 hours in an 8-hour workday, stand and/or walk 6 hours in an 8-

15

hour workday, lift 10 pounds frequently and 20 pounds occasionally (Tr. 20). Thus, Plaintiff could perform light work. Based on the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform any past relevant work and that he has no transferable job skills (Tr. 24, 25).

The vocational expert testified that Plaintiff can perform the nonskilled light occupations of packer, assembler and cleaner (Id.). The vocational expert, upon request of the ALJ, then testified that his testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT") (Id.). Based upon the testimony of the vocational expert, the claimant's age, education, work experience, and residual functional capacity, the ALF found that Plaintiff "has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Tr. 26).

To make a finding that there is work available in the economy that the claimant can perform, the ALJ must make a finding "supported by substantial evidence that claimant has the vocational qualifications to perform specific jobs." *Varley v. Secretary,* 820 F.2d 777, 779 (6th Cir.1987). Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the hypothetical question accurately portrayed the claimant's individual physical and mental impairments. In that regard, the ALJ is not required to mirror a medical report to a vocational expert in order to accurately state a claimant's relevant impairments. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In the present case, it is clear from the record that

16

the ALJ asked proper hypothetical questions to the vocational expert (Tr. 355-358).

In addition, the ALJ stated that even though Plaintiff, with the residual functional capacity to perform the full range of light work, is not disabled as directed by Medical-Vocation Rule 202.2, based on his age at the onset date, and Rule 202.14 now that he is fifty years old, Plaintiff's ability to perform all or substantially all of the requirements of this level of work is impeded by additional limitations (Tr. 25). Based upon these additional limitations, the ALJ properly asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity to which the vocation expert testified that there was (Id.).

Plaintiff argues that, based upon the DOT, he cannot perform any of these jobs. He argues that two of the three jobs have a reasoning level of 2, requiring detailed work and therefore, by definition, are not unskilled. He also argues that all three have a language level of 1 or 2, which, by definition, required the ability to read 95-120 per minutes. (Doc. 9, 7). However, even if the Plaintiff is correct in his argument, the ALJ is not bound by the DOT. *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). The ALJ properly posed questions to the vocational expert that accurately reflected the Plaintiff's physical and mental limitations. *See Strong v. Social Sec. Admin.*, 88 Fed. Appx. 841, 846-847 (6th Cir. 1987). Credibility issues are for the ALJ to determine. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). This Court is to defer heavily to such findings by the ALJ. *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.

17

1994). Thus, there is substantial evidence in the record to support the ALJ's credibility determinations as to the vocational expert and the evidence in the record to support the vocational experts findings.

IV. Conclusion

Thus, the Court finds that the decision of the Commissioner is supported by substantial evidence. The Report and Recommendation is hereby ADOPTED (Doc. 8). The ALJ decision is AFFIRMED and this matter is CLOSED.

**IT SO ORDERED.**

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court